NO.
12-04-00271-CR

 

                     IN THE COURT
OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

JERRY
GLENN WALKER,                            §                 APPEAL FROM THE 114TH

APPELLANT

 

V.                                                                         §                 JUDICIAL DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                       §                 SMITH COUNTY, TEXAS

                                                                                                                                                           


                                                     MEMORANDUM
OPINION

Jerry
Glenn Walker appeals his conviction for boating while intoxicated, for which he
was sentenced to imprisonment for nine years and fined five thousand
dollars.  Appellant raises two issues on
appeal.  We affirm.

 

Background








Appellant
was boating on Lake Palestine when he was stopped by Texas Department of Parks
and Wildlife Senior Warden Larry Hand and Warden Joe Carter.  Hand proceeded to perform a water safety
inspection, during which he verified that there were sufficient approved
floatation devices on board, that a fire extinguisher was on board and in
working order, and that there was a registration card for the boat on
board.  During the inspection, Hand
boarded Walker’s boat and inspected Walker for signs of intoxication.  One of the officers asked if Walker had been
drinking, to which Walker responded that he had consumed some champagne.  Hand then asked for permission to open an ice
chest located in the boat.  When Hand
opened the ice chest, he found an open, half-full champagne bottle.  Thereafter, Hand conducted a series of
exercises to discern whether Walker might be under the influence of
alcohol.  Hand and Carter then took
Walker ashore and conducted further field sobriety tests.  Ultimately, Hand arrested Walker for investigation
of boating while intoxicated.

Walker
was subsequently indicted for boating while intoxicated.  Hand testified on the State’s behalf at
trial.  During the State’s direct
examination of Walker, the following exchange occurred with regard to the one
of the  exercises conducted by Hand:

 

Q.            You said you were looking for particular things.  How many total clues are you looking for in
the horizontal gaze nystagmus test?

 

A.            The horizontal gaze nystagmus has a total of three clues
in each eye, and I observed six clues.

 

Q.            So you saw all six clues?

 

A.            Yes, ma’am.

 

Q.            How many clues, according to your training and
experience, do you need to have as an indicator of alcohol?

 

A.            At least four clues indicates possible presence of
alcohol above a .08 level.

 

[APPELLANT’S COUNSEL]:             I’m going to object, Your Honor, to
that insertion to the comparison.  

 

THE COURT:        The court sustains the objection.

 

Q.            Yes,  ma’am.  Six clues – four clues is – four clues
indicates a possible intoxication?

 

A.            Four clues indicates possible intoxication.

 

[APPELLANT’S COUNSEL]:             I’m going to object to that, Your
Honor.  If I might take the witness on
[voir dire].

 

 

During the
ensuing voir dire examination, Hand testified that the horizontal gaze
nystagmus (HGN) test is not designed to determine the level of intoxication,
but rather indicates whether there is some kind of depressant or intoxicant in
the system.  The trial court ruled that
Hand could not use the HGN test to establish a specific blood-alcohol level,
but could express that the results of the HGN test indicate his opinion of
intoxication.  Thereafter, the following
exchange occurred:

 








[APPELLANT’S COUNSEL]:             We would ask that the Court
instruct the jury, since this .08 has come up to the jury –.”  

 

THE COURT:        I’m not going to instruct the jury.  I’ve sustained your objection when he
expressed a .08.  The last question they
were asking him doesn’t have to do with the .08.

 

So as long as you focus yourself and the State focuses
itself within the guidelines of the case law, ask a specific question that is
admissible under Texas law, and I’ll let him answer it.

 

[APPELLANT’S COUNSEL]:             We would ask that the Court
instruct the State’s witnesses not to refer to a blood alcohol level to their
test.

 

THE COURT:        I’m going to grant an in limine with
respect to that, and the State is not to have any of their witnesses correlate
a blood alcohol level to any of the HGN test.

 

 

The jury returned
to the courtroom and the State continued its examination of Hand, in pertinent
part, as follows:

 

Q.            And by observing clues in this case – you observed all
six clues.  Did you have an opinion as to
whether or not the defendant was intoxicated in this case based on that HGN?

 

A.            Based on what I observed and my experience, I believe
that the individual was intoxicated.

 

 

Following
the close of evidence and jury argument, the jury assessed Appellant’s
punishment at  imprisonment for nine
years and a five thousand dollar fine. 
The trial court sentenced Appellant accordingly, and this appeal
followed.

 

Admissibility of Evidence








In
his first issue, Appellant argues that the trial court erred in not instructing
the jury to disregard Hand’s testimony that the HGN test results for Appellant
indicated a blood-alcohol level above 0.08.[1]  The preferred method to raise a complaint to
the trial court is for a party to (1) make a timely objection, (2) request an
instruction from the court to have the jury disregard the objectionable
testimony, and (3) move for a mistrial if an instruction to disregard is not
sufficient to cure the error.  See Young
v. State, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004).  However, the essential requirement is a
timely, specific request that the trial court refuses.  Id.

A
timely objection is one that is made at the earliest possible opportunity, as
soon as the grounds for the objection become apparent.  See Polk v. State, 729 S.W.2d
749, 753 (Tex. Crim. App. 1987); Montelongo v. State, 681 S.W.2d
47, 57 (Tex. Crim. App. 1984).  A timely
objection enables the judge to insulate the jury from any tainted or improper
evidence or, at least, permits the judge to cure quickly whatever taint might
have occurred.  See Polk, 729
S.W.2d at 753.  Requests for instructions
to disregard must also be timely made.  See,
e.g., Moore v. State, 999 S.W.2d 385, 403 (Tex. Crim. App. 1999)
(request for instruction to disregard witness statement made at the end of
testimony not timely); Cunningham v. State, 848 S.W.2d 898, 905
(Tex. App.–Corpus Christi 1993, pet. ref’d). 

In
Cunningham, the prosecutor misstated its burden of
proof during jury argument.  See Cunningham,
848 S.W.2d at 904.  The defendant
objected, and the trial court sustained the defendant’s objection.  Id.  At the conclusion of the prosecutor’s
argument, a bench conference was held, during which the defendant requested
that the court instruct the jury to disregard the prosecutor’s objectionable
statement.  Id. at
904–05.  The trial court declined to so
instruct the jury.  Id. at
905.  The court of appeals held that
although the defendant timely objected, his request for an instruction to
disregard was not timely.  Id.








In
the case at hand, Appellant objected to Hand’s statement that “[a]t least four
clues indicates possible presence of alcohol above a .08 level.”  The trial court sustained Appellant’s
objection.  See Emerson v. State, 880
S.W.2d 759, 769 (Tex. Crim. App. 1994).[2]  The State then asked Hand whether four clues
indicates possible intoxication, at which point, Appellant sought to conduct a
voir dire examination of Hand.  At the
conclusion of the voir dire examination, the trial court ruled that Hand could
not use the HGN test to establish a specific blood-alcohol level, but could
express that the results of the HGN test indicate his opinion of
intoxication.  At this point, Appellant
sought to have the trial court instruct the jury in light of the fact that Hand
had referenced a specific blood-alcohol level. 
However, the trial court interrupted Appellant, stating that the last
question the State posed had nothing to do with the specific blood-alcohol
level.

Appellant
was required to make his request for an instruction to disregard at the earliest
possible opportunity as soon as the grounds therefor had become apparent.  See Polk, 729 S.W.2d at 753; Montelongo,
681 S.W.2d at 57; see also  Moore
v. State, 999 S.W.2d at 403; Cunningham v. State, 848
S.W.2d at 905.  The grounds for
Appellant’s request for an instruction to disregard were apparent at the time
the trial court sustained his objection to Hand’s testimony regarding the
correlation of the HGN test with blood-alcohol level.  By the time Appellant made his request for an
instruction to disregard, the State had asked another question, which Hand had
answered, and to which  Appellant had
lodged an objection and conducted a voir dire examination of Hand.  We hold that Appellant’s request was not
timely.  Therefore, Appellant failed to
preserve error.  See Tex. R. App. P. 33.1(a).  Appellant’s first issue is overruled.

 

Prosecutorial Misconduct

In
his second issue, Appellant contends as follows:

 

When prosecutors deliberately and intentionally commit
repeated violations of Court orders during a trial with seeming impunity, when
they self-testify about alleged facts never before presented to a jury, and
when they blatantly and improperly lead their own friendly witnesses during
trial, at what point does irreversible error toward a defendant finally occur?

 

 

Appellant next
concedes that he did not object to every instance in which prosecutors asked
blatantly leading questions of their own friendly witnesses.  However, Appellant argues that error was
preserved because he “did object several times during the course of the trial,
and the trial judge almost always sustained [his] objections.”  Appellant further notes that the trial court
neither struck nor instructed the jury to disregard the objectionable testimony.  








We
have reviewed the record in accordance with the citations provided by Appellant
in support of his second issue.  In no
instance where the trial court sustained his objection did Appellant make a
motion to strike the objectionable testimony or request that the court instruct
the jury to disregard the same. 
Appellant cites Ovalle v. State, 13 S.W.3d 774, 783 (Tex.
Crim. App. 2000) for the proposition that “the trial court undoubtedly had a
duty” to order the jury to disregard what it had heard.  Yet, Ovalle does not place any
such duty on a trial court absent a motion or request on the part of the
objecting party.  Id.  Appellant has not raised any cogent argument
concerning any objections overruled by the trial court. We hold that Appellant
failed to preserve error.  See Tex. R. App. P. 33.1(a).  Appellant’s second issue is overruled.

 

Disposition

Having
overruled Appellant’s issues one and two, we affirm the trial
court’s judgment.

 

  
 SAM GRIFFITH   

  
Justice

 

 

Opinion
delivered November 16, 2005.

Panel consisted of Worthen, C.J., Griffith, J., and
DeVasto, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                             (DO
NOT PUBLISH)











[1] We have construed Appellant’s first issue liberally
in the interest of justice.  Appellant’s
verbatim statement of issue one is as follows:

 

Did reversible error occur at
trial when the State impermissibly encouraged or otherwise permitted a law
enforcement officer to testify before a jury that Horizontal Gaze Nystagmus
(HGN) test results of the Appellant specifically indicated the possible
presence of alcohol above a .08 level?





[2] In Emerson, the court held that
a witness may not use the HGN evidence to quantify the defendant’s blood-alcohol
level.  Id.  However, the court noted that HGN test
results are admissible as evidence that the defendant was under the influence
of alcohol so long as such evidence is not correlated to a precise
blood-alcohol level.  Id.